## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| WELLMARK, INC., doing business in Iowa as WELLMARK BLUE CROSS and BLUE SHIELD OF IOWA; WELLMARK HEALTH PLAN OF IOWA, INC.; and WELLMARK OF SOUTH DAKOTA, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> DOUG OMMEN, in his official capacity as Insurance Commissioner of Iowa, <br><br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 4:25-cv-00377 <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiffs Wellmark, Inc., doing business in Iowa as Wellmark Blue Cross and Blue Shield of Iowa, Wellmark Health Plan of Iowa, Inc., and Wellmark of South Dakota, Inc. (collectively "Wellmark") hereby file this complaint against Defendant Doug Ommen, in his official capacity as Insurance Commissioner of Iowa, and allege as follows:

### NATURE OF ACTION

1.     This action challenges a recently enacted Iowa law, in light of Defendant's even more recent statements and actions concerning enforcement of that law.  The law is Senate File 383 ("SF 383"), which amends Title XIII, subtitle 1, Chapter 510B of the Iowa Code ("Regulation of Pharmacy Benefit Manager") [hereinafter "Chapter 510B"] and is codified within Iowa Code § 510B.  *See* Ex. 1 (text of SF 383).

2.     SF 383 seeks comprehensively to regulate pharmacy benefits managers ("PBMs") and employee benefit plans, insurance carriers, and other third-party payors and their contractors and agents using PBMs or providing or administering drug benefits.

3.     This Court, via a July 21, 2025 order, has already found SF 383 to be illegal and invalid in significant part and preliminarily enjoined its enforcement in a separate, but related, lawsuit: *Iowa Association of Business and Industry v. Ommen*, 4:25-cv-00211 (SMR) (WPK) (S.D. Iowa) ("*ABI*").

4.     This Court in *ABI* limited immediate relief – *i.e.*, enforcement at the pain of contempt – to any enforcement efforts by Defendant against the named plaintiffs in *ABI*, their members (if an association), their contractors, and their other agents, as instructed by *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). The Court indicated that it was not at the time otherwise enjoining Defendant from implementing SF 383 for parties not before the Court. The Court did not, however, say its conclusions that the challenged portions of SF 383 were illegal had no application as to similarly situated parties, and the Court nowhere suggested that non-parties to *ABI* somehow were precluded from similarly challenging any future enforcement efforts by Defendant, should he commence enforcement notwithstanding *ABI*.

5.     The Court's *ABI* preliminary injunction currently is on appeal to the Eighth Circuit.

6.     The scope of the relief entered by the Court in *ABI* has left non-parties to *ABI* in a quandary: can Defendant legitimately seek to enforce SF 383 against the many entities who are non-parties to *ABI*? The answer to that question, in Wellmark's view, should be "no." The grounds on which the Court invalidated parts of SF 383 necessarily remain operational to protect persons beyond *ABI*'s named and related parties. That is, the Court, as requested by the *ABI* parties, invoked preemption under the broadly operative Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and further relied on the even more universally applicable First Amendment to the U.S. Constitution, in enjoining portions of SF 383.

Consistent with that view, Defendant undertook no enforcement action, as far as Wellmark

knows, for an extended period after this Court's issuance of the preliminary injunction in *ABI*

and indicated that he was unsure of the extent to which he could enforce SF 383, if at all.

Indeed, Wellmark much appreciated, and thought it admirable, that Defendant would not enforce

SF 383 as to non-parties to *ABI* even if the Court technically had not foreclosed it, demurring to

the contemporaneous prospect of Eighth Circuit review, the newness of the *Trump v. CASA*

precedent and its teachings on the limits of universal injunctions, and the strong legal case for

applying the Court's substantive holdings in *ABI* to non-parties to that case.

7.    But the situation has now changed.  Defendant late last month issued guidance

(dated September 24) in the form of a *Bulletin* (Ex. 2) and this past week reiterated in a letter

(dated October 8) to interested parties (Ex. 3) that he believes he is "obligated" to enforce SF 383

"in its entirety" against regulated entities who are "not plaintiffs in *ABI*."  Ex. 2 (*Bulletin* at 12);

Ex. 3 (Letter at 1).  Defendant warned that "PBMs, contractors and agents are expected to

implement SF 383 for all of their third-party payor clients who are not subject to the court's

order in *ABI*."  Ex. 2 (*Bulletin* at 12).  Also very recently, Wellmark has become aware of

complaints relating to alleged non-compliance with SF 383 that Defendant is investigating with

respect to Wellmark's business associated with non-parties to *ABI*.  Plus, Wellmark recently

received a communication from Defendant seeking information regarding SF 383's

implementation by Wellmark for entities who are not parties to *ABI*, again signaling prospective

investigatory and enforcement efforts by Defendant.

8.    Wellmark is covered by the Court's preliminary injunction in *ABI*, because it is a

member of an associational plaintiff – Iowa Association of Business and Industry ("ABI") – in

the earlier action, as well as is a contractor associated with other named plaintiffs and members of ABI.

9.     At the same time, it is unclear whether the earlier preliminary injunction protects Wellmark insofar as it insures or administers the health benefit plans of similarly situated plan sponsors who are *not* parties to *ABI* or ABI members.  Wellmark believes that the appropriate scope of the preliminary injunction should include Wellmark's administration of all of its business accounts and individual insurance products; but Wellmark acknowledges the full scope of the preliminary injunction in this respect is subject to reasonable competing interpretations. And that lack of clarity now necessitates Wellmark seeking relief in this Court.

10.     On the one hand, given Defendant's stated willingness to enforce SF 383 beyond strictly the *ABI* parties, Wellmark is under imminent threat from Defendant of enforcement of the provisions of SF 383 that were preliminarily enjoined in *ABI*, including to the extent it fails to follow SF 383 in its administration of ERISA-covered plans not associated with the named parties in *ABI*, which is a plethora of entities.  This enforcement activity siphons resources, has potential monetary penalties, and even risks Wellmark's licensure in the State of Iowa.  On the other hand, in light of the expansive application of ERISA and the First Amendment, Wellmark's clients who are not parties to *ABI* and who sponsor ERISA plans have, understandably, pressed Wellmark as their contractor to disregard those SF 383 provisions that the Court in *ABI* ruled are illegal.  They have fiduciary obligations to act in accordance with their ERISA plans' terms and ERISA fiduciary standards, which they view as contrary to SF 383's mandates.  These clients' legal concerns and protections directly transfer to Wellmark, because, by contract, Wellmark is liable for failing to act in accord with the ERISA plans' terms, directions, and legal obligations.

11.     Moreover, Wellmark's peril also extends beyond administering ERISA-covered plans, as a portion of the Court's preliminary injunction rested on First Amendment grounds and required the invalidating of a costly prescription dispensing fee as inseverable from the part of SF 383 violative of the First Amendment.  The Court's holdings in that regard are equally applicable to all groups and individuals that enjoy the protections of the First Amendment, and implementation of these provisions – if constitutionally invalid – would cause financial and other injury in connection with *all* Wellmark-insured and -administered plans and policies.  For these clients, as well as ERISA-covered plans, governing contracts and policies are currently subject to renewal, and the controversy between Defendant's newly insistent position to enforce SF 383 and the directly opposite interests against application of SF 383 for plans and policyholders makes drafting prospective plans and policies impossible.

12.     Wellmark now files this action to obtain, at a minimum, the injunctive relief already afforded to the parties in *ABI*, in conjunction with the plans and policies Wellmark insures or administers for non-parties to *ABI*.  More expansively, it here raises the same ERISA-preemption and First Amendment claims pursued in *ABI* in association with administration of plans and policies for non-parties to *ABI* and preserves its right to all relief consistent with the Eighth Circuit's ultimate ruling in *ABI*.  Accordingly, Wellmark will promptly seek a preliminary injunction enjoining operation of the same provisions of SF 383 (plus one additional provision) enjoined in *ABI* as applied to the plans and policies Wellmark insures and administers for non-parties to *ABI*, and it likewise sues ultimately to enjoin and declare illegal *all* parts of SF 383 (consistent with the ultimate Eighth Circuit ruling) as applied to the plans and policies Wellmark insures and administers for non-parties to *ABI*.

13.     Wellmark's action here, in its status as insurer and administrator of the plans and policies of entities not parties to *ABI*, avoids many piecemeal complaints filed in this Court to extend the *ABI* ruling to non-parties to *ABI*.  Wellmark is the largest health insurance provider and provider of third-party administrator ("TPA") services in Iowa; its action therefore covers a very wide swath of instances outside of *ABI* to which the preliminary injunction should be extended, for effectively a large segment of the remaining business community's ERISA plans and, with respect to the First Amendment, non-ERISA plans and individual coverage.

14.     Wellmark had hoped to avoid filing this lawsuit.  But Defendant's recent enforcement position, Wellmark's own interests and the interests of the groups and individuals it insures, and the limited nature of injunctive relief allowable in *ABI* under *Trump v. CASA* now necessitate the Court's additional intervention:  the Court should issue an injunction halting, and declare illegal, Defendant's enforcement of SF 383 with respect to the plans and policies Wellmark insures and administers for those who are not parties to *ABI*.

## <u>PARTIES</u>

15.     Wellmark, Inc., doing business as Wellmark Blue Cross and Blue Shield of Iowa, is a licensed insurer subject to the insurance laws of Iowa and the jurisdiction of Defendant and offers "Health benefit plans," as defined in Chapter 510B.1 and SF 383, to Iowa employers – private and public – providing health benefits coverage for their employees, as well as to other groups and to individuals.  It insures the benefits in some instances, and in other instances serves as a TPA (*i.e.*, third-party administrator) providing administrative services to employers and other groups sponsoring and self-funding the relevant health benefits coverage.  In most instances for which it insures coverage or acts as a TPA, Wellmark, Inc. is responsible for arranging and administering prescription drug benefits, including separately contracting, if

necessary, for additional PBM services.  Its principal place of business is 1331 Grand Avenue,

Des Moines, Iowa 50309.

16.    Wellmark Health Plan of Iowa, Inc. ("WHPI") is a wholly owned subsidiary of

Wellmark, Inc.  WHPI is a licensed insurer subject to the insurance laws of Iowa and the

jurisdiction of Defendant and offers "Health benefit plans," as defined in Chapter 510B.1 and SF

383, to Iowa employers – private and public – providing health benefits coverage for their

employees, as well as to other groups and to individuals (such as those obtaining coverage on the

Affordable Care Act's Exchange).  It insures the benefits in some instances, and in other

instances serves as a TPA providing administrative services to employers and other groups

sponsoring and self-funding the relevant health benefits coverage.  In most instances for which it

insures coverage or acts as a TPA, WHPI is responsible for arranging and administering

prescription drug benefits, including separately contracting, if necessary, for additional PBM

services.  Its principal place of business is 1331 Grand Avenue, Des Moines, Iowa 50309.

17.    Wellmark of South Dakota, Inc. ("WSD") is a wholly owned subsidiary of

Wellmark, Inc.  WSD is a licensed insurer in the State of South Dakota.  WSD insures health

benefits in some instances in South Dakota, and in other instances serves as a TPA providing

administrative services to employers and other groups in South Dakota sponsoring and self-

funding the relevant health benefits coverage.  In most instances for which it insures coverage or

acts as a TPA, WSD is responsible for arranging and administering prescription drug benefits,

including separately contracting, if necessary, for additional PBM services.  For purposes of this

action, WSD is subject to the insurance laws of Iowa and the jurisdiction of Defendant to the

extent WSD members fill prescriptions at Iowa pharmacies subject to the requirements of Iowa

law, including SF 383. Its principal place of business is 1601 West Madison Street, Sioux Falls, SD 57104.

18.     With respect to private-employer groups Wellmark insures or for whom it acts as a TPA, the health benefit plans are governed by ERISA.

19.     Wellmark here sues in its capacity as an insurer and TPA solely in connection with plans and policies it supplies for entities (including individuals) not covered by the preliminary injunction entered in *ABI*. In such instances, Wellmark qualifies as a "Health carrier," "Pharmacy benefits manager," and "Third-party payor" as those terms are defined in Iowa Code § 510B.1.

20.     Defendant Doug Ommen is Iowa's Insurance Commissioner. His principal place of business is 1963 Bell Avenue, Suite 100, Des Moines, Iowa 50315. Defendant is being sued solely in his official capacity. Defendant and those subject to his supervision, direction, or control – including the Department of Insurance and Financial Services, Insurance Division ("Division") – are responsible for implementing and enforcing Chapter 510B and SF 383.

## JURISDICTION & VENUE

21.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Wellmark's causes of action arise under the U.S. Constitution's Supremacy Clause, the First and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. §§ 1983 and 1988. *See* U.S. Const. art. VI & amends. I and XIV; *see also Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983).

22.     The Court has personal jurisdiction over Defendant because he resides within and has continuous and systematic contacts in Iowa.

23.     Wellmark has Article III standing to pursue this action as a health carrier, third-party payor, and PBM as defined in and directly regulated by Chapter 510B and SF 383 and faces direct and adverse imminent financial and other harms from SF 383's implementation and enforcement; it also has standing as a contractor and agent for other third-party payors (as defined under Chapter 510B and SF 383) whose health benefit plans it insures and administers, because it is either subject to liability and indemnification to them insofar as Wellmark follows SF 383's provisions that are contrary or in excess of the terms, design, and instructions surrounding the third-party payors' plans or subject to Defendant's enforcement insofar as Wellmark follows the terms, design, and instructions surrounding the third-party payors' plans in contravention of SF 383.

24.     Venue is proper pursuant to 28 U.S.C. § 1391, because events giving rise to the suit occurred in this District, Defendant resides in this District and implements and enforces SF 383 within this District, and SF 383 applies to health benefit plans, health carriers, third-party payors, and PBMs (as defined under Chapter 510B and SF 383) and others in this District and/or doing business in this District.

## **BACKGROUND**

### A.     **Wellmark's Iowa Presence**

25.     Wellmark is a Blue Cross and Blue Shield entity and Iowa's largest provider of health insurance and administrative services in connection with health benefits plans to large and small groups, including private and public employers.

26.     Wellmark is also Iowa's largest provider of health insurance for individuals, such as under the Exchange for individuals pursuant to the Affordable Care Act.

27.     Through plans and policies it insures and administers, Wellmark provides healthcare benefits to more than 800,000 lives in the State of Iowa.

28.     In its contracts for groups that it insures and administers, Wellmark agrees to implement the terms and design of plans that groups fashion and is subject to losses associated with, and liability for, failing to follow in its administration its groups' plan terms and design features.

**B.     Chapter 510B and SF 383**

29.     Chapter 510B, as enacted in 2007 and effective January 1, 2008, addressed PBMs doing business in Iowa.  PBMs are companies that act as intermediaries between health benefit plans, health insurers, drug manufacturers, pharmacies, and health-benefit-plan covered individuals who require prescription drugs.  PBMs are often contracted to administer and manage prescription drug benefits offered through health benefit plans, and PBM services include, among other things, processing claims and payments for covered prescription drugs, managing drug formularies and drug costs, and establishing and maintaining pharmacy networks through which individuals in health benefit plans can access covered prescription drugs at lower cost.

30.     SF 383 greatly expands Iowa's regulation of PBMs and adds extensive new restrictions and prohibitions directly on health benefit plans, health carriers, and third-party payors who provide prescription drug benefits to covered persons within Iowa.

31.     Chapter 510B, whose definitions govern SF 383, defines "Pharmacy benefits manager" as "a person who, pursuant to a contract or other relationship with a third-party payor, either directly or through an intermediary, manages a prescription drug benefit provided by the third-party payor."  Iowa Code § 510B.1.15.  "Prescription drug benefit" means "a health benefit plan providing for third-party payment or prepayment for prescription drugs."  *Id.* § 510B.1.19.

"Third-party payor" is defined, with some exceptions not relevant to this action, as "any entity other than a covered person or a health care provider that is responsible for any amount of reimbursement for a prescription drug benefit" and expressly includes "health carriers and other entities that provide a plan of health insurance or health care benefits." *Id.* § 510B.1.22. "Covered person" means "a policyholder, subscriber, or other person participating in a health benefit plan that has a prescription drug benefit managed by a pharmacy benefits manager." *Id.* § 510B.1.4. "Health benefit plan" means "a policy, contract, certificate, or agreement offered or issued by a third-party payor to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services." *Id.* § 510B.1.6. "Health carrier" means "an entity subject to the insurance laws and regulations of this state, or subject to the jurisdiction of the commissioner, including an insurance company offering sickness and accident plans, a health maintenance organization, a nonprofit health service corporation, or a plan established pursuant to chapter 509A for public employees." *Id.* § 510B.1.9.

     32.    Under these definitions, employers (and those acting on their behalf) that offer health benefits to their employees (and the employees' dependents) are third-party payors within Chapter 510B's, and thus SF 383's, scope, and their coverage for their employees (and the employees' dependents) constitutes a health benefit plan for covered persons within Chapter 510B's, and thus SF 383's, scope; similarly, other group plans that are not employer-related and that offer health benefits to members of the group constitute health benefit plans for covered persons within Chapter 510B's and SF 383's scope. Insurers, like Wellmark, that underwrite and administer employers' and other groups' health benefits coverage for their employees (and the employees' dependents) and members are health carriers within Chapter 510B's and SF 383's scope. Health carriers and TPAs, like Wellmark, responsible for amounts of reimbursement for

prescription drug benefits also meet Chapter 510B's and SF 383's definition of a third-party

payor. And persons and entities, like Wellmark, that contract to manage prescription drug

benefits for employers and other third-party payors are PBMs within Chapter 510B's and SF

383's scope.

33.    SF 383 contains, among others, the following provisions, with **bold** notation for

the entities and persons to whom the provision directly applies, as well as a shorthand description

of the topic or type of provision at issue:

| Section | Language | Topic/Type of Provision |
|---|---|---|
| SF 383 § 1<br><br>Iowa Code § 510B.4.4. | Adds an overarching anti-discrimination principle that states: "A **pharmacy benefits manager**, **health carrier**, **health benefit plan**, or **third-party payor** shall not discriminate against a pharmacy or a pharmacist with respect to participation, referral, reimbursement of a covered service, or indemnification if a pharmacist is acting within the scope of the pharmacist's license, as permitted under state law, and the pharmacy is operating in compliance with all applicable laws and rules" | Anti-discrimination provision, including anti-referral element |
| SF 383 § 3<br><br>Iowa Code § 510B.4B.1.a. | Restricts **PBMs**, if "a pharmacy or pharmacist has agreed to participate in a **covered person**'s **health benefit plan**," from "prohibit[ing] or limit[ing] the **covered person** from selecting a pharmacy or pharmacist of the **covered person**'s choice, or impos[ing] a monetary advantage or penalty that would affect a **covered person**'s choice," with a "monetary advantage or penalty" defined as "includ[ing] a copayment or coinsurance variation, a reduction in reimbursement for services, a promotion of one participating pharmacy over another, or comparing the reimbursement rates of a pharmacy against mail order pharmacy reimbursement rates" | Provision limiting guiding covered persons to preferred pharmacies, including anti-promotion element |

| | | |
|---|---|---|
| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.1.b. | Adds an any-willing-provider provision prohibiting **PBMs** from "[d]eny[ing] a pharmacy or pharmacist the right to participate as a contract provider under a **health benefit plan** if the pharmacy or pharmacist agrees to provide pharmacy services that meet the terms and requirements of the **health benefit plan** and the pharmacy or pharmacist agrees to the terms of reimbursement set forth by the **third-party payor** for similarly classified pharmacies" | Any-willing-pharmacy provision applicable to PBMs |
| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.1.c. | Imposes on **PBMs** a pharmacy-accreditation standard that prohibits use of, for "a pharmacy or pharmacist, as a condition of participation in a **third-party payor** network, any course of study, accreditation, certification, or credentialing that is inconsistent with, more stringent than, or in addition to state requirements for licensure or certification, and the administrative rules adopted by the board of pharmacy" | Pharmacy-accreditation standard for network participation |
| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.1.d. | Restricts **PBMs** from "[u]nreasonably designat[ing] a prescription drug as a specialty drug[1] to prevent a **covered person** from accessing the prescription drug, or limiting a covered person's access to the prescription drug, from a pharmacy or pharmacist that is within the **health carrier**'s network"; and adds an enforcement provision under which a "**covered person** or pharmacy harmed by an alleged violation of this paragraph may file a complaint with the commissioner, and the commissioner shall, in consultation with the board of pharmacy, make a determination as to whether the covered prescription drug meets the definition of a specialty drug" | Open-access standard for specialty drugs, with enforcement provision |
| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.1.e. | Prohibits **PBMs** from requiring a "**covered person**, as a condition of payment or reimbursement, to purchase pharmacy services, including prescription drugs, exclusively through a mail order pharmacy" | Prohibition on mail-order exclusivity |

---

[1] SF 383 defines "Specialty drug" as "a drug used to treat chronic and complex, or rare medical conditions and that requires special handling or administration, provider care coordination, or patient education that cannot be provided by a nonspecialty pharmacy or pharmacist." SF 383 § 1 (Iowa Code § 510B.1.21B.).

| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.1.f. | Prohibits **PBMs** from "[i]mpos[ing] upon a **covered person** a copayment, reimbursement amount, number of days of a prescription drug supply for which reimbursement will be allowed, or any other payment or condition relating to purchasing pharmacy services from a pharmacy that is more costly or restrictive than would be imposed upon a **covered person** if the pharmacy services were purchased from a mail order pharmacy" | Cost-sharing equivalence for mail-order pharmacies |
|---|---|---|
| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.2.a. | Requires that if a "**third-party payor** providing reimbursement to covered persons for prescription drugs restricts pharmacy participation [in its network], the third-party payor shall notify, in writing, all pharmacies [of] the opportunity to participate in the health benefit plan at least sixty days prior to the effective date of the health benefit plan restriction" and also mandates that "[a]ll pharmacies in the geographical coverage area of the health benefit plan shall be eligible to participate under identical reimbursement terms for providing pharmacy services and prescription drugs" | Any-willing-pharmacy provision applicable to third-party payors, with accompanying notice requirement |
| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.2.b. | Requires that "[t]he **third-party payor** shall inform **covered persons** of the names and location of all pharmacies participating in the **health benefit plan** as providers of pharmacy services and prescription drugs" | Notice requirement to covered persons about in-network pharmacies |
| SF 383 § 3<br><br>Iowa Code<br>§ 510B.4B.4. | Adds enforcement measure providing that "[a] **covered person** or pharmacy injured by a violation of [§ 3 of SF 383] may maintain a cause of action to enjoin the continuation of the violation" | Enforcement provision |
| SF 383 § 4<br><br>Iowa Code<br>§ 510B.8.3. | Requires that a **PBM** "shall not impose different cost-sharing or additional fees on a **covered person** based on the pharmacy at which the **covered person** fills the prescription drug order" | Cost-sharing equivalence at all pharmacies |
| SF 383 § 4<br><br>Iowa Code<br>§ 510B.8.4. | Requires that "[f]or the purpose of reducing premiums, one hundred percent of all rebates received by a **pharmacy benefits manager** shall be passed through to the **health carrier**, or to the **employee plan sponsor** as permitted by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq." | Pass through by PBM of all rebates |

14

| SF 383 § 4<br><br>Iowa Code<br>§ 510B.8.5. | Requires that **PBMs** "shall include any amount paid by a **covered person**, or on behalf of a **covered person**, when calculating the **covered person**'s total contribution toward the **covered person**'s cost-sharing" | Credit for cost-sharing, irrespective of source of funds |
|---|---|---|
| SF 383 § 4<br><br>Iowa Code<br>§ 510B.8.6. | Requires that "[a]ny amount paid by a **covered person** for a prescription drug shall be applied to any deductible imposed on the **covered person** by the **covered person**'s **health benefit plan** in accordance with the **health benefit plan**'s coverage documents" | Credit toward deductible, in amount covered person pays |
| SF 383 § 4<br><br>Iowa Code<br>§ 510B.8.7. | Requires that if "a **covered person**'s policy, contract, or plan providing for third-party payment or prepayment of health or medical expenses qualifies as a high-deductible health plan" under the Internal Revenue Code, then "a copayment, coinsurance, or deductible paid by the **covered person**" shall not count amounts from other sources until "after the **covered person** satisfies the **covered person**'s minimum deductible," if otherwise "the **covered person** [would] becom[e] ineligible for a health savings account" | Cost-sharing rules for high-deductible health-plans |
| SF 383 § 5<br><br>Iowa Code<br>§ 510B.8B.1. | Requires a **PBM** to reimburse all pharmacies no less than the PBM reimburses an "affiliate for dispensing the same prescription drug." | Reimbursement rate by PBM to all pharmacies to match or exceed PBM affiliates' rate |
| SF 383 § 5<br><br>Iowa Code<br>§ 510B.8B.2. | Sets **PBM** reimbursement rate for retail pharmacies at "most recently published national average drug acquisition cost for the prescription drug on the date that the prescription drug is administered or dispensed" or, if unavailable, "the wholesale acquisition cost" | Reimbursement rate by PBMs to retail pharmacies at NADAC rate |
| SF 383 § 5<br><br>Iowa Code<br>§ 510B.8B.3. | Requires **PBM** to "reimburse the retail pharmacy or pharmacist a professional dispensing fee in the amount of ten dollars and sixty-eight cents"[2] | Dispensing fee for all prescriptions at retail pharmacies |

[2] Under SF 383, "'Retail pharmacy' means a pharmacy that is not a pharmacy chain or a publicly traded entity, and that does not exclusively provide mail order dispensing of prescription drugs." SF 383 § 1 (Iowa Code § 510B.1.21A.). "'Pharmacy chain' means an entity that has twenty or more pharmacies under common ownership or control located in at least twenty or more states." *Id.* (Iowa Code § 510B.1.16A.).

| | | |
|---|---|---|
| SF 383 § 5<br><br>Iowa Code<br>§ 510B.8B.4.a. | Requires **PBM** to submit "a quarterly report to the commissioner of all drugs reimbursed at 10 percent or more below the national average acquisition cost," as well as those at "ten percent or more above" | Quarterly reporting to commissioner |
| SF 383 § 5<br><br>Iowa Code §<br>510B.8B.4.b. | Requires various items to be included in **PBM**'s quarterly report to the commissioner, including month and quantity of the prescription drug, whether dispensing pharmacy was an affiliate of the **PBM**, and if the drug was dispensed pursuant to a "government health plan" | Quarterly reporting to commissioner (additional details) |
| SF 383 § 5<br><br>Iowa Code<br>§ 510B.8B.4.d. | Requires that "[a] copy of the report shall be published on the **pharmacy benefit manager**'s public internet site for twenty-four months" | Internet publication of quarterly report |
| SF 383 § 6<br><br>Iowa Code<br>§ 510B.8D.1. | Requires that "[a]ll contracts executed, amended adjusted, or renewed on or after July 1, 2025, that apply to prescription drug benefits on or after January 1, 2026, between a **pharmacy benefits manager** and a **third-party-payor**, or between a person and a **third-party payor**, shall include" the following provisions: (a) "pass-through pricing"[3]; and (b) payments received by PBM "shall be used or distributed pursuant to the pharmacy benefit manager's contract with the third-party payor or with the pharmacy" | Contract terms between third-party payor and PBM |
| SF 383 § 6<br><br>Iowa Code<br>§ 510B.8D.2. | Requires that SF 383's mandated changes in contract terms "between a **pharmacy benefits manager** and a **third-party payor**" shall "supersede any contractual terms to the contrary in any contract executed, amended, adjusted, or renewed on or after July 1, 2025, that applies to prescription drug benefits on or after January 1, 2026" | Supersession of SF 383 over contrary contract terms between third-party payor and PBM |
| SF 383 § 7<br><br>Iowa Code<br>§ 510B.8E.1.-.3. | Requires that "[a] **pharmacy benefits manager** shall provide a reasonable process to allow a pharmacy to appeal any matter," with detailed standards mandated for the appeal | Enforcement provision |

---

[3] SF 383 defines "'Pass-through pricing'" as "a model of prescription drug pricing in which payments made by a third-party payor to a pharmacy benefits manager for prescription drugs are equivalent to the payments the pharmacy benefits manager makes to the dispensing pharmacy or dispensing health care provider for the prescription drugs, including any professional dispensing fee." SF 383 § 1 (Iowa Code § 510B.1.11B.).

34.    SF 383 "applies to pharmacy benefit managers, health carriers, third-party payors, and health benefit plans that manage a prescription drug benefit in the state on or after July 1, 2025."  SF 383 § 9.

35.    SF 383 has a severability provision, which states that "[t]he provisions of this division of this Act are severable pursuant to [Iowa Code § 4.12]."  SF 383 § 8.

36.    Beyond SF 383's enforcement provisions, SF 383's enforcement is further enhanced by the enforcement provisions already within the Iowa Code and that otherwise will apply for violations of SF 383's provisions.  In the *Bulletin*, the Division indicated that "[v]iolations of SF 383 would also constitute violations of the Iowa Insurance Trade Practices Act, [Iowa Code § 507B]."  Ex. 2 (*Bulletin* at 16).

37.    Industry analyses of SF 383 estimate that, in the aggregate, the cost for health benefit plans and covered persons, if SF 383's provisions are fully implemented, will increase annually by tens of millions of dollars – perhaps by as much as $340 million annually.  Jason Clayworth, *Iowa Groups Urge Reynolds to Veto Pharmacy Reform Bill*, Axios Des Moines (May 14, 2025), https://www.axios.com/local/des-moines/2025/05/14/iowa-pharmacy-benefit-manager-reform-pbm.

38.    Wellmark understands SF 383 to be among the most expensive, single Iowa legislative enactments ever passed effecting an increase in costs for health benefit plans; and it will likely precipitate the largest increase in health-benefit-plan costs for Iowa's third-party payors from any source of legislation – federal or state – since enactment of the Affordable Care Act by Congress in 2010.  Wellmark estimates, for the plans and policies it insures or administers, SF 383 will increase costs by nearly $100 million annually.  Individuals covered by Wellmark plans and policies will face an additional nearly $40 million in costs (such as through

increased coinsurance, copayments, and deductibles) not covered by their plans and policies.

39.     The Iowa legislature indicated that the object of SF 383 is to provide money to local independent pharmacies, particularly in rural areas.[4]

## C.    ERISA Preemption

40.     ERISA's coverage extends to any employee benefit plan, including health benefit plans, established or maintained by a private employer or employee organization for employees. *See* 29 U.S.C. § 1003(a), (b).

41.     With ERISA, Congress enacted a "comprehensive" statute that seeks to make ERISA plans "exclusively a federal concern."  *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 317, 321 (2016) (internal quotation marks and citation omitted).  Though ERISA does not require any employer to offer an employee benefits plan to its employees, once the employer does, ERISA sets forth "'uniform standards of primary conduct'" such as governing fiduciary standards, and a "uniform regime of ultimate remedial orders and awards [to apply] when a violation has occurred.'"  *Conkright v. Frommert,* 559 U.S. 506, 517 (2010) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).

42.     ERISA plans may be self-funded or insured, with the former resulting from the employer carrying the risk of benefit payments itself and the latter resulting from the employer's

---

[4] *E.g.*, *Senate Video SF 383: by Klemish from Winneshiek*, Iowa Legislature, at 04:47:25–04:47, https://www.legis.iowa.gov/dashboard?view=video&chamber=S&clip=s2025042—8040306830—&dt=2025-04-28&offset=2030&bill=SF%20383&status=i&ga=91 (Apr. 28, 2025); *id.* at 04:48:18 - 04:49:12; *House Video SF 383: by Lundgren from Dubuque*, Iowa Legislature, at 05:44:13–5:45:22, https://www.legis.iowa.gov/dashboard?view=video&chamber=H&clip=h20250512051355834&dt=2025-05-12&offset=1429&bill=SF%20383&status=r (May 12, 2025); Gigi Wood, *Businesses Split on PBM Bill Sent to Governor*, BUS. REC. (May 23, 2025), https://www.businessrecord—.com/businesses-split-on-pbm-bill-sent-to-governor/; Stephen Gruber-Miller, *Iowa lawmakers target prescription drug prices, pharmacy reimbursements with "PBM" bills*, Des Moines Reg. (Feb. 6, 2025), https://www.desmoinesregister.com—/story/news/politics/2025/02/06/iowa-legislature-targets-pharmacy-benefit-managers-with-pbm-bills-aimed-to-help-costs/78244622007/.

purchase of an insurance policy that shifts the risk of benefit payment to an insurance company. *See* 29 U.S.C. § 1002(1) (noting that employer may establish a "welfare benefit plan" through "the purchase of insurance or otherwise").

43.     ERISA contains an express preemption section, which provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA.  *Id.* § 1144(a).  "State law[s]" are defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," with "State," in turn, including "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate directly or indirectly, the terms and conditions of employee benefit plans covered by [ERISA]."  *Id.* § 1144(c)(1)-(2).

44.     Pursuant to ERISA's preemption provision, a state law "relate[s] to" an ERISA plan, and is preempted, "'if it has a *connection with* or *reference to* such a plan.'"  *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)) (emphasis added).

45.     A state law has a "connection with" ERISA plans, and therefore "relate[s] to" them and is preempted, if:

a.     The state law "require[s] providers [*i.e.*, ERISA-plan sponsors] to structure benefit plans in particular ways, such as by requiring payment of specific benefits, or by binding plan administrators to specific rules for determining beneficiary status."  *Rutledge*, 592 U.S. at 86-87 (citations omitted).[5]

---

[5] Under ERISA, a "'participant' means any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan," and a "'beneficiary'

b.      The state law "'governs . . . a central matter of plan administration,'" such as reporting, recordkeeping, disclosures, or fiduciary obligations, or "'interferes with nationally uniform plan administration.'"  *Gobeille*, 577 U.S. at 320 (quoting *Egelhoff*, 532 U.S. at 148).

c.      The state law has "'acute, albeit indirect, economic effects'" so as to "'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'"  *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995)).

46.     A state law will also have a "connection with" an ERISA plan if it sets forth an "alternative enforcement mechanism" to the remedies ERISA provides in 29 U.S.C. § 1132(a). *Travelers*, 514 U.S. at 658.  Separately, ERISA's enforcement scheme, particularly 29 U.S.C. § 1132(a), of its own power, preempts state-law remedies that would operate against ERISA plans.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 217 (2004); *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 142 (1990).

47.     A state law makes "reference to" an ERISA plan, and therefore "relate[s] to" an ERISA plan and is preempted, if it "'acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation.'"  *Gobeille,* 577 U.S. at 319-20 (quoting *Cal. Div. of Labor Standards Enf't v. Dillingham Constr. N.A.*, 519 U.S. 316, 325 (1997)).

48.     ERISA preemption extends to state laws that regulate ERISA plans directly as well as indirectly through state laws that regulate ERISA-plan providers supplying administrative services, such as TPAs, which includes PBMs, because – in light of the fact that

---

means a person designated by a participant . . . who is or may become eligible for a benefit [under an ERISA plan]."  29 U.S.C. § 1002(7)-(8).

TPAs and PBMs "manage benefits on behalf of plans" – "a regulation of [them] 'function[s] as a regulation of an ERISA plan itself.'" *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 966 (8th Cir. 2021) (quoting *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 613 F.3d 179, 188 (D.C. Cir. 2010)); *see generally Pharm. Care Mgmt. Ass'n v. Gerhart*, 852 F.3d 722, 730-32 (8th Cir. 2017) (finding that ERISA preempted earlier version of Iowa Code § 510B.8.).

49.     ERISA's insurance "savings" clause provides that a state law "relat[ing] to" ERISA plans and otherwise preempted will be saved from preemption if it "regulates insurance." 29 U.S.C. § 1144(b)(2)(A).  However, under ERISA's "deemer" clause, *id.* § 1144(b)(2)(B), self-funded ERISA plans and the TPAs and PBMs who assist them in administering their ERISA plans cannot be considered insurance companies or engaged in the business of insurance and thereby be subject to any saved state insurance regulations.

50.     A state law regulates insurance, so as to be saved for insured ERISA plans, only where the state law is:  (a) "specifically directed toward entities engaged in insurance," and (b) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 342 (2003).

**D.     The First Amendment**

51.     In relevant part, the First Amendment of the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  The requirements of the First Amendment apply to the states through the Fourteenth Amendment. *See 1-800-411-Pain Referral Serv., LLC v. Otto* ("*Otto*"), 744 F.3d 1045, 1054 (8th Cir. 2014).

52.     "'[F]reedom of speech includes both the right to speak freely and the right to refrain from speaking at all.'"  *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir.

2019) (quoting *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892 (2018)).

53.    The First Amendment protects commercial speech "from unwarranted governmental regulation," as "[c]ommercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561-62 (1980). As such, governmental burdens on protected commercial speech are subject to heightened scrutiny. *Id.* at 564.

54.    To assess the constitutionality of an infringement on commercial speech, "[t]he first question to ask is whether the challenged speech restriction is content- or speaker-based, or both." *Otto*, 744 F.3d at 1054 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011)). "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). Governmental restrictions on speech are content-based where the government "disfavors speech with a particular content." *Otto*, 744 F.3d at 1055.

55.    Courts have adopted a four-part test to determine if a content- or speaker-based infringement on commercial speech survives constitutional scrutiny: "(1) whether the commercial speech at issue concerns unlawful activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest." *Id.*

56.     "[I]t is the State's burden to justify its content-based law as consistent with the First Amendment," *Sorrell*, 564 U.S. at 571-72, and to "demonstrate that the harms it recites are real." *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).

**E.     *ABI v. Ommen***

57.     On June 23, 2025, the *ABI* plaintiffs filed a Complaint for Injunctive and Declaratory Relief ("*ABI* Complaint") against Defendant in this Court. *See ABI*, ECF No. 1.[6]

58.     In the *ABI* Complaint, the *ABI* plaintiffs challenged SF 383 on the grounds that many of its provisions are preempted by ERISA or violate the First Amendment, and they sought an order invalidating and enjoining the enforcement of the various illegal provisions of SF 383.

59.     The *ABI* plaintiffs further sought, as applied to them, an order invalidating and enjoining SF 383 in its entirety, as the illegal provisions could not be severed from any remaining portions of the law.

60.     Specifically, the *ABI* Complaint, like this complaint, challenged the following amended sections of Chapter 510, all of which are listed in the chart set forth above:

    a.     § 510B.4.4.

    b.     § 510B.4B.1.a.-.f.

    c.     § 510B.4B.2.a.-.b.

    d.     § 510B.4.

    e.     § 510B.8.3.-.7.

    f.     § 510B.8B.1.-.3.

    g.     § 510B.8B.4.a., b., d.

---

[6] Because Wellmark's complaint largely raises the same legal claims and seeks the same relief as in *ABI*, this complaint borrows heavily from the one in *ABI*.

h.      § 510B.8D.1.-.2.

i.      § 510B.8E.1.-.3.

61.     On June 26, 2025, the *ABI* plaintiffs filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Emergency Motion") seeking an immediate and temporary halt to the enforcement of SF 383.  *ABI*, ECF No. 6.

62.     On June 30, 2025, this Court granted the *ABI* plaintiffs' Emergency Motion, resulting in issuance of a temporary restraining order ("TRO") to halt Defendant's enforcement of SF 383 as to the *ABI* plaintiffs, pending consideration of a preliminary injunction.  *Id.*, ECF No. 17.

63.     On July 18, 2025, this Court held a hearing at which the *ABI* parties presented factual and legal arguments in support of their respective claims or defenses regarding the *ABI* Complaint and Emergency Motion.  *Id.*, ECF No. 52.

64.     On July 21, 2025, this Court granted, in part, the *ABI* Emergency Motion's request for a preliminary injunction ("*ABI* Preliminary Injunction").  *Id.*, ECF No. 54.

65.     In the *ABI* Preliminary Injunction, this Court held that the following provisions were "enjoined as preempted by ERISA":  § 510B.4.4. (anti-discrimination requirements); § 510B.4B.1.b. and § 510B.4B.2.a. (any-willing-provider standards); § 510B.4B.1.d. (open-access standard for specialty drugs); § 510B.4B.1.f. and § 510B.8.3. (mail-order pharmacy and cost-sharing provisions); § 510B.8.6. (deductible credit requirements); § 510B.8D.1. and § 510B.8D.2. (mandatory contract terms and supersession provisions); and § 510B.4B.4. (general enforcement provision).  *ABI*, ECF No. 54 at 86.

66.     This Court also held that the following provisions were "enjoined as violative of the First Amendment":  § 510B.4.4. (anti-referral provision) and § 510B.4B.2.a. (compelled disclosure requirements).  *ABI*, ECF No. 54 at 86.

67.     This Court further held that the following provisions were enjoined as inseverable:  § 510B.8D.2. (supersession over contrary contract terms) and § 510B.8B.3. (dispensing fee provision that cannot survive without the anti-discrimination framework).  *ABI*, ECF No. 54 at 86.

68.     In the ABI Preliminary Injunction, the Court stated:

> The Court's analysis reveals that SF 383 crosses constitutional lines in multiple respects.  Several provisions impermissibly dictate the structure and administration of employee benefit plans by mandating network compositions, cost-sharing arrangements, and contractual terms that ERISA reserves to plan sponsors and fiduciaries.  Other provisions violate the First Amendment by suppressing truthful commercial speech without adequate constitutional justification.  These constitutional defects cannot be remedied by Iowa's characterization of the statute as regulating only intermediary conduct, given the functional interdependence between ERISA plans and the service providers essential to their operation.

*Id*. at 85.

69.     The *ABI* Preliminary Injunction provides that Defendant is enjoined from enforcing the SF 383 provisions referenced in ¶¶ 65-66, above, "against [the *ABI*] [p]laintiffs and their contractors and agents who assist in the administration of their health benefit plans."  *Id.* at 86.  In light of *Trump v. CASA* and its bar on universal injunctions, however, the Court did not extend the *ABI* Preliminary Injunction to entities unrelated to the parties in *ABI*.  The Court said: Defendant "retains full authority to implement all provisions of SF 383 against persons not covered by this injunction, and to enforce all non-enjoined provisions against all persons, including Plaintiffs and their contractors and agents.  Additionally, [Defendant] may develop

appropriate regulatory guidance concerning compliance with the entirety of SF 383's requirements." *Id.* at 83.

70.    The *ABI* Preliminary Injunction did not enjoin § 510.B.4B.1.a. (anti-promotion provision). *Id*. at 17.  The Court ruled that because this provision only restricts PBMs' First Amendment rights and the *ABI* plaintiffs were not PBMs, they did not have standing to challenge the provision.  *Id*.  Nor did the Court enjoin parts of SF 383 other than those referenced ¶¶ 65-66 that the *ABI* plaintiffs had challenged as preempted by ERISA, because it determined that ERISA preemption did not extend to them.

71.    The Court ruled in *ABI* that the *ABI* Preliminary Injunction "shall remain in effect pending final resolution of [the *ABI* case] or further order of the Court."  *ABI*, ECF No. 54 at 87.

72.    On July 25, 2025, Defendant filed a notice of appeal to the Eighth Circuit from the *ABI* Preliminary Injunction.  *Id.*, ECF No. 56.  On August 7, 2025, the *ABI* plaintiffs filed a cross-appeal.  *Id.*, ECF No. 60.

73.    On August 18, 2025, this Court entered an order staying the *ABI* proceedings pending the disposition of the appeal and cross-appeal to the Eighth Circuit.  *Id.*, ECF No. 65.

**F.    Defendant's Enforcement of Provisions of SF 383**

74.    On July 1, 2025, following this Court's entry of the *ABI* TRO, the Division sent Wellmark an email in response to Wellmark's request to meet with Defendant to gain further understanding regarding the Division's implementation of SF 383, in light of the just issued TRO in *ABI*.  In the email, the Division noted the TRO being issued "to prevent the [Division] from enforcing SF 383," that the Division would not "be issuing any guidance on SF 383," and that the Division did "not think a meeting to discuss the bill is appropriate."

75.     Then, after issuance of the *ABI* Preliminary Injunction, there was an informal conversation between Defendant and the Federation of Iowa Insurers ("Federation") in response to the Federation's request to the Division seeking guidance on SF 383 for its members, including Wellmark.  Defendant indicated the Division would not pursue any proactive enforcement, such as investigations, audits, or inspections, and that he was uncertain about the extent of his enforcement authority and the scope of the injunctive relief.

76.     In the two months following those communications with Defendant and the Division, Wellmark was unaware of any effort by Defendant to enforce SF 383 with respect to anyone, including non-parties to *ABI*.  During this period, for instance, Wellmark received no inquiries from the Division regarding its compliance with SF 383 with respect to the plans and policies it insures and administers for entities who are not parties to *ABI.*

77.     Without any prior notice or opportunity (other than the above noted contacts) for Wellmark or seemingly others to comment, Defendant and the Division issued, on September 24, 2025, the *Bulletin*, which, in part, focused on SF 383 and its implementation and enforcement. *See* Ex. 2.

78.     In the *Bulletin*, Defendant states that "SF 383 is enforceable in its entirety against all entities that are not plaintiffs in *ABI v. Ommen*."  *Id*. at 12.  Defendant said the Division takes possible "[v]iolations of SF 383 . . . seriously and will continue to investigate and take enforcement actions where necessary to protect Iowa consumers."  *Id.* at 16.  He invited interested parties to file complaints at the Division:  "Any consumers or industry participants aware of these practices should report them directly to the Division."  *Id.*

79.     Defendant further states in the *Bulletin* that "[f]or those employer groups who are plaintiffs in [the *ABI*] lawsuit, and contractors and agents those plaintiffs use for plan

administration, some sections of SF 383 remain enforceable." *Id.* at 12.  Defendant identified

certain provisions of SF 383 subject to the *ABI* Preliminary Injunction as provisions that may not

be enforced, but only as to the *ABI* plaintiffs, their contractors, and agents, when acting on behalf

of the *ABI* plaintiffs.  *See id*. at 12 n.23.  According to the *Bulletin*, "PBMs, contractors and

agents *are* expected to implement SF 383 for all of their third-party payor clients who are *not*

subject to the court's order in *ABI v. Ommen*."  *Id.* at 12 (emphasis added).

80.    In the *Bulletin*, Defendant states, for the first time, that "[v]iolations of SF 383

would also constitute violations of the Iowa Insurance Trade Practices Act."  *Id*. at 16.  The civil

penalties under that Act are:  "not more than one thousand dollars for each act or violation . . .,

but not to exceed an aggregate of ten thousand dollars, unless the person knew or reasonably

should have known the person was in violation [of the Act], in which case the penalty shall be

not more than five thousand dollars for each act or violation, but not to exceed an aggregate

penalty of fifty thousand dollars in any one six-month period."  Iowa Code § 507B.7.1.a.  In

addition, "[i]f [Defendant] finds that a violation []was directed, encouraged, condoned, ignored,

or ratified by the employer of the person or by an insurer, [Defendant] shall also assess a penalty

to the employer or insurer."  *Id.*

81.    After issuance of the *Bulletin*, Wellmark became aware of three complaints filed

with the Division from pharmacies and that the Division was investigating, regarding alleged

non-compliance with SF 383 in connection with health benefit plans or insurance that Wellmark

insures or administers for non-*ABI* parties.

82.    Also following issuance of the *Bulletin*, the Federation sent to Defendant a letter

objecting to the Division's stated intent to enforce SF 383 against non-parties to *ABI*, explaining

that ERISA and the First Amendment protected similarly situated non-*ABI* parties no less than

the *ABI* parties and that Defendant's *Bulletin* would incite new federal lawsuits formally to obtain the protection of an injunction similar to the one issued in *ABI*.  *See* Ex. 4.

83.    In response, in his letter of October 8, Defendant cited this Court's statement, "[o]n page 83 of the injunction,  . . . explicitly [noting] that '[Defendant] retains full authority to implement all provisions of SF 383 against persons not covered by this injunction, and to enforce all non-enjoined provisions against all persons, including Plaintiffs and their contractors and their agents.'"  Ex. 3 (Letter at 1).  Based on the Court's statement, Defendant said "[t]he Insurance Division is *obligated* to enforce laws passed by the Iowa Legislature and to comply with court orders."  *Id.* (emphasis added).  Defendant did concede, however, that "[i]t may be debatable as a legal matter whether *Trump v. CASA* restricts the district court's authority in this context as described in the *ABI v. Ommen* injunction" and that "[t]he existence of 'two competing versions' of a statute, one applicable to named parties and one to everyone else in a market may be arguably inconsistent" and "may raise other issues of law."  *Id.*  Defendant added: "Nevertheless, as stated by the district court and the Bulletin, SF 383 is enforceable in its entirety 'against persons not covered by this injunction.'"  *Id.* at 2 (quoting *ABI* Preliminary Injunction). He concluded by saying that "[s]pecific facts and enforcement provide the opportunity for resolving disputes in interpretation."  *Id.*

84.    On October 9, 2025, Wellmark received the following communication (Ex. 5) from the Division, with an accompanying spreadsheet to complete regarding PBM services, indicating Defendant's intention to enforce all provisions of SF 383 with respect to any regulated entity that is not a party to *ABI*:

> The Market Regulation Bureau ("Bureau") of the Iowa Insurance Division ("IID") is requesting Information to support its regulatory oversight of pharmacy benefit managers under chapter 510B of the Iowa code. On June 11, 2025, Iowa Senate

File 383 ("SF383") was signed into law, thus adding additional provisions to chapter 510B of the Iowa code effective July 1, 2025.

Before it went into effect, the Iowa Association of Business and Industry ("ABI") challenged SF383. ABI has more than 600 members. In addition, three employer health plans that are not represented by ABI joined as plaintiffs. *ABI v. Ommen* resulted in a Preliminary Injunction issued on July 21, 2025. The injunction restricts IID from enforcing some provisions of SF383 against the plaintiffs in the lawsuit.

However, IID is still responsible for enforcing the majority of chapter 510B. (1) The entirety of SF383 is applicable to plans and their PBMs who are not plaintiffs. (2) Not all provisions of SF383 were enjoined as against the *ABI* plaintiffs. Notably, the requirement that PBMs pay at least national average drug acquisition cost (NADAC) to pharmacies was not enjoined. (3) In addition, all previously existing provisions of chapter 510B are applicable to the *ABI* plaintiffs and all other PBMs operating in Iowa.

IID is requesting this information to assist in identifying the enjoined plan administrators that each PBM holds a current contract agreement with for the calendar year 2025. This process will aid the Bureau in readily identifying, within initial complaints, and alleged violations of law by parties involved in the above court proceeding which enjoined the Division from enforcement of certain provisions.

Attached is a listing of plan sponsors whose plans and their respective PBMs against whom IID is enjoined from enforcement of some provisions in SF383 at this time. Reference the attached spreadsheet and provide IID with the requested information.

Your response is requested to be received by the close of business on 10/31/2025. The information obtained will be confidential pursuant to §505.8 (8) of the Iowa Code.

85.    Defendant's increasing efforts to enforce SF 383 in its entirety with respect to non-parties to *ABI* creates difficult, unworkable, and ultimately untenable conditions for Wellmark and non-parties to *ABI*. For those non-parties to *ABI* who sponsor or administer ERISA plans, they understand the increased costs to them and their employees and dependents as a result of application of the SF 383 provisions enjoined in *ABI*, as well as the plan-design limitations and speech prohibitions required by SF 383. They do not want to comply and thereby bear those costs, plan-design limitations, and speech prohibitions. They have pressed Wellmark

as their contractor, agent, administrator, and entity contractually responsible for PBM services about how they can escape the burdens of SF 383 that the Court in *ABI* ruled are preempted by ERISA, invalid under the First Amendment, or inseverable from those illegal provisions.

86.     These non-parties to *ABI* have fiduciary obligations to follow ERISA-plan terms, defray plan costs, and act in the sole interests of their plan's participants and beneficiaries – all of which are subject to policing and enforcement by federal authorities and by plan parties under ERISA's causes of action.  Yet, SF 383 mandates actions contrary to those fiduciary obligations. And for other entities and individual insureds (*i.e.*, those unconnected to ERISA plans) who are not covered by the *ABI* Preliminary Injunction and whose benefits Wellmark insures or administers, they too seek to prevent financial and other harm to themselves – such as application of the $10.68 dispensing fee – that flows from the Court's First Amendment and inseverability holdings in *ABI*.  Wellmark, as a third-party payor itself, as a contractor or agent of other third-party payors, as an insurance carrier, and as an entity arranging or providing PBM services (as defined under Chapter 510B and SF 383) faces a Hobson's Choice between mutually exclusive options:  (a) accede to enforcement threats from Defendant and act consistent with SF 383, but inconsistently with federal obligations and protections and its customers' wishes and best legal and financial interests; or (b) act consistent with federal obligations and protections and its customers' wishes and best legal and financial interests, but face enforcement action by Defendant for violating SF 383.

## CLAIMS FOR RELIEF

### COUNT 1 (ERISA PREEMPTION)

87.     Wellmark repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

88.     SF 383 applies to Wellmark in its status as insurer or administrator of ERISA plans – including, as relevant here, the ERISA plans of entities that are not parties to *ABI* or members of ABI – because SF 383 operates (to one extent or another) upon ERISA-plan sponsors, ERISA plans and insurers, TPAs, and PBMs involved in ERISA-plan underwriting and administration, through SF 383's definitions of and application to a "Third-party payor," "Health benefit plan," "Health carrier," and "Pharmacy benefits manager."  In addition, because a "Covered person" under SF 383 encompasses ERISA-plan participants and beneficiaries and SF 383 extends its protections to them, Wellmark in its status as insurer and administrator of ERISA plans – including, as relevant here, ERISA plans that are not parties to *ABI* or members of ABI – is subject to SF 383's provisions.

89.     As applied to ERISA plans for non-parties to *ABI* that Wellmark insures and administers, SF 383 has a "connection with" ERISA plans, and therefore "relate[s] to" ERISA plans and is preempted, because SF 383's provisions require ERISA-plan sponsors to structure their plans in particular ways, govern central matters of ERISA-plan administration, and interfere with nationally uniform ERISA-plan administration, including (in the order of the provisions' placement in SF 383, as listed in the preceding chart, *see supra* ¶ 33):

    a.     SF 383's anti-discrimination provision (Iowa Code § 510B.4.4.), which prohibits differentiation by an ERISA plan and its PBM among pharmacies within the ERISA plan's network, dictates the design of an ERISA plan's prescription drug benefits by prohibiting an ERISA plan from adopting terms that establish incentives (such as lower cost-sharing) for certain pharmacies in the network and by prohibiting the limiting of the dispensing of specialty drugs to certain pharmacies within the network; and it interferes with a central matter of ERISA-plan administration by limiting the extent to which an ERISA plan's fiduciaries and other

administrators can recommend or refer participants and beneficiaries to a pharmacy in the participants', beneficiaries', and ERISA plan's best financial and other interests.

b.      SF 383's provision (Iowa Code § 510B.4B.1.a.) that limits the guiding of covered persons to preferred pharmacies dictates the design of an ERISA plan's prescription drug benefits by prohibiting an ERISA plan from adopting terms establishing incentives for the utilization of certain pharmacies in the network, such as varying copayment and coinsurance terms or varying benefit allowances for different categories of in-network pharmacies; and it interferes with a central matter of plan administration by restricting the extent to which an ERISA plan's fiduciaries and other administrators can recommend or promote participants and beneficiaries to a pharmacy in the participants', beneficiaries', and ERISA plan's best financial and other interests.

c.      SF 383's any-willing-pharmacy provision (Iowa Code § 510B.4B.1.b.) applicable to PBMs that administer a health benefit plan's prescription drug benefits dictates how an ERISA plan's pharmacy network is designed and maintained, the terms an ERISA plan must offer to pharmacies in its network, and the terms of ERISA-plan coverage that must be offered to participants and beneficiaries using pharmacy networks.

d.      SF 383's provision (Iowa § 510B.4B.1.c.) setting a pharmacy-accreditation standard for participation in a third-party payor's network (not just a PBM's network) dictates how an ERISA plan's pharmacy network is designed and maintained.

e.      SF 383's provision (Iowa Code § 510B.4B.1.d.) that calls for more open accessibility to specialty drugs dictates how an ERISA plan's pharmacy network is designed and maintained, the terms an ERISA plan must offer to pharmacies in its network, and the terms of ERISA-plan coverage to be offered to participants and beneficiaries using specialty drugs.

f.      SF 383's provision (Iowa Code § 510B.4B.1.e.) that prohibits mail-order exclusivity dictates the terms of ERISA-plan coverage that must be offered to participants and beneficiaries by removing a cost-effective benefits option ERISA-plan sponsors may adopt.

g.      SF 383's provision (Iowa Code § 510B.4B.1.f.) that requires cost-sharing equivalence based on cost-sharing for prescription drugs obtained from mail-order pharmacies dictates the design of an ERISA plan's prescription drug benefits by prohibiting an ERISA plan from adopting terms incentivizing the use of mail-order pharmacies, such as varying copayment and coinsurance terms.

h.      SF 383's any-willing-provider provision (Iowa Code § 510B.4B.2.a.) applicable to third-party payors, which has an accompanying notice requirement, dictates how an ERISA plan's pharmacy network is designed and maintained, the terms an ERISA plan must offer to pharmacies in its network, and the terms of ERISA-plan coverage that must be offered to participants and beneficiaries using pharmacy networks; and it interferes with a central matter of ERISA-plan administration by enlarging the requirements governing an ERISA plan's mandated disclosures in Iowa.

i.      SF 383's provision (Iowa Code § 510B.4B.2.b.) requiring notice by third-party payors to covered persons of details about network providers interferes with a central matter of ERISA-plan administration by enlarging the requirements governing an ERISA plan's mandated disclosures in Iowa.

j.      SF 383's provision (Iowa Code § 510B.8.3.) that requires cost-sharing equivalence among all pharmacies dictates the design of an ERISA plan's prescription drug benefits by prohibiting an ERISA plan from adopting terms establishing incentives for using certain pharmacies in the network, such as varying copayment and coinsurance terms.

k.      SF 383's provision (Iowa Code § 510B.8.4.) that requires a pass through by a PBM of all rebates to the ERISA plan or its insurer interferes with a central matter of ERISA-plan administration by limiting how an ERISA plan may choose to compensate a PBM for the PBM's services and by forcing ERISA plans and ERISA-plan sponsors who currently use rebates flowing to the PBM to help compensate the PBM for its services to adopt alternative compensation arrangements with their PBMs.

l.      SF 383's provisions (Iowa Code § 510B.8.5. &.6.) that require inclusion in cost-sharing and deductibles of any amounts paid on behalf of a covered person, such as via drug manufacturer coupons and other manufacturers' incentives, dictates the design of an ERISA plan's prescription drug benefits by prohibiting the adoption of copayment, coinsurance, and deductible terms that exclude such third-party incentives from the calculations.

m.      SF 383's provision (Iowa Code § 510B.8.7) that mandates cost-sharing rules for high-deductible health plans dictates the design of an ERISA plan's prescription drug benefits by restricting how plans must calculate and manage copayments, coinsurance, and deductibles.

n.      SF 383's provision (Iowa Code § 510B.8B.1. & 2.) that requires reimbursement rates to all pharmacies to match or exceed PBM affiliates' reimbursement rates dictates the design of an ERISA plan's prescription drug benefits by prohibiting ERISA plans from adopting terms that incentivize participants and beneficiaries to utilize pharmacy options that may be more cost-effective to the ERISA plan and that would lead to decreased cost-sharing for participants and beneficiaries.

o.      SF 383's provisions (Iowa Code § 510B.8B.4.a., .b., & .d.) requiring quarterly reporting to Defendant, including internet publication, interferes with a central matter

of ERISA-plan administration by enlarging the requirements governing an ERISA plan's

mandated disclosures in Iowa.

p.      SF 383's provisions (Iowa Code § 510B.8D.1. & .2.) requiring that

contracts between third-party payors and PBMs contain pass-through pricing and other contract

terms interfere with a central matter of ERISA-plan administration by limiting how an ERISA

plan may choose to compensate a PBM for PBM services and forcing ERISA plans and ERISA-

plan sponsors to alter contracts that allow PBMs, as part of their compensation, to retain

increments generated under alternatives to pass-through pricing.

90.     SF 383's enforcement provisions (Iowa Code §§ 510B.4B.1.d., 510B.4B.4., and

510B.8E.1.-.3.) authorizing causes of action against third-party payors and PBMs by those

injured by alleged violations of provisions in SF 383, including covered persons and pharmacies,

have a "connection with" ERISA plans, and therefore "relate to" them and are preempted,

because they provide alternative enforcement mechanisms to ERISA's exclusive remedies to

challenge, and assert liability for, conduct by ERISA-plan sponsors, ERISA plans, and PBMs

administering prescription drug benefits on an ERISA plan's behalf.  For the same reason,

ERISA preempts the enforcement of SF 383 through the Iowa Insurers Trade Practices Act, as

outlined in the *Bulletin*.

91.     Separately, as a result of 29 U.S.C. § 1132(a), ERISA's enforcement scheme, of

its own force, preempts SF 383's enforcement provisions (Iowa Code §§ 510B.4B.1.d.,

510B.4B.4., and 510B.8E.1.-.3.) authorizing causes of action against third-party payors and

PBMs by those injured by alleged violations of provisions in SF 383, including covered persons

and pharmacies, because they provide alternative enforcement mechanisms to ERISA's

exclusive remedies to challenge, and assert liability for, conduct by ERISA-plan sponsors,

ERISA plans, and PBMs administering prescription drug benefits on an ERISA plan's behalf. For the same reason, ERISA preempts the enforcement of SF 383 through the Iowa Insurers Trade Practices Act, as outlined in the *Bulletin*.

92.      The financial effects of SF 383's various provisions – including its dispensing-fee requirement (Iowa Code § 510B.8B.3.), which adds at least $10.68 cents to the cost of each prescription drug dispensed at retail pharmacies – are so acute that they necessarily and severely impact ERISA-plan sponsors' substantive coverage choices and use of service providers (such as PBMs), and, on that basis, SF 383's provisions have a "connection with" ERISA plans and, therefore, "relate to" them and are preempted.

93.      SF 383's provision (Iowa Code § 510B.8.4.) compelling that rebates be passed through by PBMs expressly to "the employee plan sponsor as permitted by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*" impermissibly makes a "reference to" ERISA plans and, therefore, "relate[s] to" them and is preempted.

94.      Because it is currently in effect and operative and, pursuant to the *Bulletin* and Defendant's recent communications and interactions with Wellmark and the Federation, to be enforced presently, SF 383's preempted provisions – if not invalidated – will have immediate and lasting injury and impact on Wellmark with respect to ERISA plans that Wellmark insures or administers for entities who are not encompassed within *ABI*, including:

a.      Wellmark must modify its current contracts or revise its contracts up for negotiation with its clients that are ERISA-covered plans and ERISA-plan sponsors to conform to SF 383.

b.     Wellmark must modify its current contracts or revise its contracts up for negotiation with third parties with which its contracts to provide products and services to ERISA-covered plans and ERISA plan sponsors to conform to SF 383.

c.     Wellmark must modify its administrative policies and procedures where it qualifies under SF 383 as a third-party payor, health carrier, or PBM or contractor or agent to an ERISA-covered plan or ERISA plan sponsor to conform to the requirements of SF 383.

d.     Absent these modifications and revisions, Wellmark will be in jeopardy of enforcement by Iowa authorities for violation of SF 383's provisions, while at the same time also be in jeopardy of violating ERISA or causing its clients to violate or in jeopardy of liability to its clients by not faithfully complying with current ERISA-plan terms and the ERISA duties of ERISA plans that are contrary SF 383's directives.

e.     Wellmark will also face tremendous costs, including potential loss of customers and business and significant administrative burdens in attempting to comply with the provisions of SF 383, and those costs and burdens cannot be effectively recouped and remedied if the challenged provisions are ultimately enjoined as applied to Wellmark in connection with Wellmark's insuring and administering of ERISA plans for non-parties to *ABI*.

f.     Wellmark, in its roles as a third-party payor, health carrier, or PBM and contractor and agent to ERISA-covered plans and ERISA-plan sponsors who are not encompassed by *ABI* must produce and distribute mandated and costly notices as a result of SF 383, including those to pharmacies and ERISA-plan participants and beneficiaries, above and beyond what is required under ERISA, as well as new notices to ERISA-plan participants and beneficiaries regarding their ERISA plans' altered prescription drug benefits and pharmacy networks.

g.    Wellmark will also incur substantial increased costs as a result of SF 383's mandatory dispensing fee as well as from the SF 383 provisions that prohibit cost-saving plan- and benefit-design features with respect to prescription drug benefits.

h.    Wellmark, or the ERISA plans it administers and insures not encompassed in *ABI*, will be compelled to mitigate the costs and financial losses stemming from SF 383, by amending ERISA-plan options to offer more limited prescription drug coverage and require greater cost-sharing by covered persons or otherwise cut benefits.

95.    SF 383 provisions are preempted both for self-funded ERISA plans and for insured ERISA plans not part of *ABI* that Wellmark administers and insures and for which state insurance regulations sometimes are "saved" under ERISA's insurance savings clause, 29 U.S.C. § 1144(b)(2)(B), because:

a.    Under ERISA's "deemer" clause, *id.* § 1144(b)(2)(B), self-funded ERISA plans and the TPAs and PBMs who assist them in administering their ERISA plans cannot be considered insurance companies or engaged in the business of insurance and thereby be subject to any saved state insurance regulations.

b.    SF 383's provisions do not meet the test to be "saved" as state insurance regulations for insured ERISA plans because:  (i) SF 383's provisions are not specifically directed toward entities engaged in insurance, but instead encompass and are directed as well to, in the majority of its provisions, additional entities such as PBMs and pharmacies that carry no risk; and (ii) SF 383 does not substantially affect the risk-pooling arrangement between the insurer and the insured, given that it is indifferent to the risk-pooling between them and, in contrast, seeks to affect beneficially and primarily the financial situation of certain pharmacies.

c.      SF 383's provisions, even if assumed to be insurance regulations, are inconsistent with and therefore preempted by ERISA's requirements, including a fiduciary's obligations to act solely for their participants' and beneficiaries' interests and for the purpose of defraying an ERISA plan's administrative expenses.  SF 383's provisions prevent PBMs, ERISA plans, and their fiduciaries, contractors, and administrators from communicating with an ERISA plan's participants and beneficiaries about cost-savings to be incurred through use of certain pharmacies and plan options.

96.      Notwithstanding that SF 383 contains a severability provision, the provisions of SF 383 that ERISA preempts are not severable from the remainder of SF 383, because the exclusion of the offending provisions for ERISA plans fundamentally alters the nature and scope of what the Iowa legislature enacted, and the soundest conclusion is that the legislature would have preferred no law at all to the one resulting after preemption.  The task of severing is unworkable and impermissibly legislative in function, in that the Court would be placed in the position of fashioning new legislation upon voiding whole provisions, excising words from other provisions, limiting various provision as applied to ERISA plans, and adjudging the extent to which any remaining provisions or words are inextricably intertwined with the illegal parts.

97.      Because ERISA preempts SF 383's provisions, they are null and void as applied to ERISA plans, their sponsors, their fiduciaries, their administrators, their PBMs, and their participants and beneficiaries, and specifically as applied to Wellmark in its capacity as a third-party payor, PBM, and health carrier with respect to ERISA-covered plans who are not parties in *ABI*, and they should be enjoined from operation and declared illegal.

## COUNT 2 (FIRST AMENDMENT)

98.    Wellmark repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

99.    SF 383's provision (Iowa Code § 510B.4.4.) purporting to address discrimination prohibits PBMs, health benefit plans, health carriers, and third-party payors from "discriminat[ing]" against a pharmacy or pharmacist "with respect to," among other things, "referral[s]."  This anti-referral provision, by preventing referrals of particular pharmacies for reasons including cost-savings and quality, infringes upon the rights of third-party payors, health carriers, health benefit plans, and PBMs, including Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, to provide accurate and consumer-relevant information to covered persons (*i.e.*, those participating in relevant health benefit plans or with policies insured or administered by Wellmark) about their prescription drug benefits.

100.    SF 383's provision (Iowa Code § 510B.4B.1.a.) barring PBMs from "prohibit[ing] or limit[ing]" covered persons from selecting a participating pharmacy of their choice defines "prohibit or limit" to include, among other things, "a promotion of one participating pharmacy over another."  This anti-promotion provision limiting the guiding of covered persons to preferred pharmacies infringes upon third-party payors', health carriers', health benefit plans', and PBMs', including Wellmark's with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, rights to provide accurate and complete information to covered persons, which harms covered persons and their health benefit plans by depriving covered persons of beneficial, cost-saving information.

101.    SF 383's notice requirement (new Iowa Code § 510B.4B.2.a.), found in the any-willing-provider provision applicable to third-party payors (including health carriers), and which requires third-party payors that impose restrictions on pharmacy participation in a health benefit plan to "notify, in writing, all pharmacies within the geographical coverage area of the health benefit plan restriction, and offer the pharmacies the opportunity to participate in the health benefit plan," compels Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI* to speak about the terms of confidential health benefit plans to parties with which third-party payors have no relationship.  This notice requirement infringes upon third-party payors', including Wellmark's with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, protected right not to speak and harms third-party payors by compelling the revelation of commercially sensitive information.

102.    The anti-referral and anti-promotion provisions prevent third-party payors, health carriers, health benefit plans, and their PBMs, such as Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, from speaking freely to covered persons regarding their prescription drug benefits.  The notice provision prevents third-party payors, health carriers, and PBMs, including Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, from refraining from speaking about their pharmacy networks to any pharmacy in the geographical area, regardless of the relationship (or lack thereof) between the parties.

103.    The anti-referral provision is both content- and speaker-based.  It disfavors speech with a particular content, namely, speech that distinguishes certain pharmacies from others and

"refers" certain pharmacies while not referring others.  The anti-referral provision is speaker-based because it prevents only certain disfavored speakers – PBMs, health benefit plans, health carriers, and third-party payors – from providing pharmacy referrals, as opposed to, for example, medical professionals or others with pertinent knowledge.

104.    The anti-promotion provision is both content- and speaker-based.  It specifically prohibits promotional speech elevating "one participating pharmacy over another."  Iowa Code § 510B.4B.1.a.  The anti-promotion provision is also speaker-based because it restricts the speech only of PBMs acting on behalf of health benefit plans, as opposed to any other entity involved in the provision of pharmacy benefits to covered persons, thereby disfavoring certain speakers.

105.    The notice requirement is both content- and speaker-based.  It mandates speech that third-party payors (including health carriers) and PBMs, such as Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, otherwise would not make, thereby necessarily altering the content of the speech. Wellmark otherwise would not provide the mandated notices, as the structure and terms of health benefit plans and their provider networks are highly sensitive commercial information that third-party payors and PBMs, including Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, seek to protect from competitors.  Additionally, the notice requirement is content-based because it disfavors speech with a particular content, namely, speech referencing pharmacy networks that contain restrictions.  And the notice requirement is speaker-based, as it imposes a burden only on disfavored third-party payors – those that maintain restricted pharmacy networks.

106.    The anti-referral and anti-promotion provisions do not purport to restrict misleading speech or speech concerning unlawful activity.  Rather, the provisions place restrictions on third-party payors, health carriers, health benefit plans, and their PBMs in an effort to protect the commercial interests of rural independent pharmacies, even at the expense of the third-party payors', health carriers', health benefit plans', and PBMs' speech rights and covered persons' ability to access beneficial information about their prescription drug benefits.  Third-party payors, health carriers, health benefit plans, and PBMs seek to "promote" or "refer" certain in-network pharmacies to covered persons to communicate the availability of lower-cost or higher-quality pharmacy offerings, information that covered persons and their health benefit plans value.

107.    The compelled speech at issue in the notice requirement does not concern unlawful or misleading activities.  The trigger for having to comply with the notice clause is simply providing reimbursement for prescription drug benefits through a pharmacy network that contains *lawful* restrictions.  Such restrictions, which the state disfavors, are commonplace and serve important cost-saving functions for covered persons and health benefit plans.  Pharmacy network restrictions are not misleading, as they are industry-standard and transparent for all pharmacies for which they are relevant.

108.    Iowa does not have a substantial interest in preventing (through the anti-referral and anti-promotion provisions) third-party payors, health carriers, health benefit plans, and their PBMs from communicating salient information to covered persons, or in forcing (through the notice requirement) third-party payors to share commercially sensitive information with parties with whom the third-party payors have no preexisting relationship.  There are no "harms" that

would be prevented by burdening speech in this manner, particularly given that Chapter 510B already imposes requirements on PBM contracts with pharmacies.

109.    Even if Iowa had a substantial interest animating the anti-referral and anti-promotion provisions and the notice requirement, these provisions are overbroad and indirect regulations that are insufficiently narrow in their tailoring.  The anti-referral and anti-promotion provisions do not directly advance Iowa's interests, substantial or not, as Iowa seeks to protect pharmacy rights, but it does so by burdening the rights of *other* parties – the speech rights of third-party payors, health carriers, health benefit plans, and their PBMs and the rights of covered persons to accurate, full information.  This indirect attempt to shore up the commercial position of certain pharmacies amounts to a "fear that people would make bad decisions [according to the government] if given truthful information," which is insufficient to justify what amounts to a silencing of Wellmark.  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002).  Further, the amount of beneficial speech prohibited by these provisions demonstrates that they lack the required narrow tailoring.  They prevent third-party payors, health carriers, health benefit plans, and PBMs from referring certain pharmacies or promoting participating pharmacies in any manner and for any reason, regardless of how beneficial to the covered person or the health benefit plan.

110.    The notice requirement likewise fails for lack of narrow tailoring.  Instead of pursuing its purported end of increasing pharmacy network access directly through non-speech-related means, Iowa has relied on compelling speech that may not even have the effect Iowa seeks.  The notice requirement is an indirect, overly extensive, and unduly burdensome mandate that requires uniform disclosure to *all* area pharmacies, regardless of whether any given pharmacy demonstrates interest in participating in a third-party payor's network.

111.    Collectively, and individually, the anti-referral and anti-promotion provisions and the notice requirement have severe practical consequence for and cause injury not just to third-party payors, health carriers, health benefit plans, and PBMs, but also covered persons.  SF 383 prohibits Iowa employers and health-benefit-plan sponsors and their insurers, TPAs, and PBMs from telling employees and their dependents that they can save money (for instance, through avoiding the $10.68 dispensing fee) by:  (a) filling their prescriptions at a national pharmacy chain such as Walgreens, CVS, Wal-Mart, Costco, etc., or (b) utilizing a mail-order pharmacy for their prescription needs.  All of those who finance covered prescription drug benefits, including covered persons, stand to lose through ever-accumulating greater costs, because of SF 383's silencing of relevant, useful commercial speech, so that select retail pharmacies may benefit.

112.    The illegality under the First Amendment of SF 383 provisions makes any severability analysis further unworkable.  With numerous provisions barred under the First Amendment, any remainder cannot be salvaged without impermissibly refashioning SF 383 into an incomprehensible and unworkable measure and one that the legislature would not have enacted.

113.    Because SF 383 violates the First-Amendment rights of third-party payors, health carriers, health benefit plans, and their PBMs, including Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, and other SF 383 provisions are inseverable from the unconstitutional parts, SF 383's provisions are null and void and should be enjoined from operation and declared unconstitutional and illegal.

## REQUEST FOR PRELIMINARY RELIEF

114.    Wellmark repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

115.    Wellmark is entitled to preliminary injunctive relief and will promptly seek it in this action or otherwise inform the Court of a change in circumstances that makes preliminary relief unnecessary.

116.    Wellmark, with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, has a likelihood of success on the merits of its ERISA-preemption and First Amendment causes of action – as this Court has already held in *ABI* that the *ABI* plaintiffs were likely to succeed in challenging many provisions of SF 383 on the same legal grounds.  Wellmark, with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, is similarly likely to succeed in challenging the one additional provision of SF 383 that the Court declined to address on the merits in *ABI* on standing grounds, § 510B.4B.1.a., because Wellmark, a PBM, as defined under Chapter 510B and SF 383, has standing to challenge that provision and that provision infringes upon Wellmark's free-speech rights as a PBM, without sufficient justification or narrow tailoring, making it violative of the First Amendment.

117.    SF 383 will cause Wellmark, with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, to suffer immediate and irreparable injury for which there is no adequate remedy at law because:

      a.    Wellmark, under SF 383, is subject to a state law that is invalid and preempted by ERISA and invalid under the First Amendment.

b.      Based on SF 383 and the *Bulletin*, Wellmark is currently required to amend or revise its contracts with ERISA-covered plans and ERISA-plan sponsors and the benefits, products, and services Wellmark offers to conform to SF 383, modify its ERISA-plan administration policies and procedures to conform to the requirements of SF 383, and amend or revise its contracts with third parties it engages to provide products and services to its ERISA-plan business to conform with SF 383; must produce and distribute the mandated and costly notices to pharmacies and ERISA participants and beneficiaries above and beyond what is required under ERISA, as well as new notices to ERISA participants and beneficiaries regarding their ERISA plans' altered pharmacy benefits and provider networks; and will incur substantial increased costs and administrative burdens as a result of SF 383's provisions, including its mandatory dispensing fee.

c.      Once accomplished, the changes to ERISA-plan documents and instruments cannot readily and quickly be undone, so that Wellmark needs immediate relief to protect its right to meaningfully obtain the benefit of a positive ERISA-preemption and First Amendment ruling on the merits.

d.      Defendant's violation of Wellmark's First Amendment rights is irreparable in its own right, as any infringement of such paramount rights, for any amount of time, is irreparable.

e.      Wellmark cannot recoup its expenditure of funds in compliance with SF 383 incurred while awaiting a ruling on the merits, because there is no mechanism under Chapter 510B or SF 383 to recover the costs associated with compliance in the meantime or any enforcement penalties or other amounts paid to Iowa or to others and Defendant's immunity from damages would prevent a remedial monetary recovery directly from him.

f.    The harm to Wellmark cannot adequately be compensated by money damages, is irreparable absent injunctive relief, including a preliminary injunction, and a declaration that SF 383 is invalid and preempted.

118.    The balance of equities favors Wellmark, because Iowa suffers no harm as a result of preliminary relief by being prevented from violating federal law and the Constitution.  Iowa actually conserves resources by avoiding enforcement obligations associated with SF 383.  And whereas Wellmark's losses while awaiting a positive ruling on the merits from the Court cannot later be recouped, any wrongs suffered by other parties should the Court grant preliminary relief later found to be not owing, can more readily be remedied.

119.    The public interest favors a preliminary injunction because the public has no interest in the enforcement of an illegal state law and injunctive relief will preserve the status quo.  Plus, members of the public will *save* money through the enjoining of SF 383's expensive provisions in comparison to the substantial additional costs, such as increased cost-sharing obligations, they are likely to face absent an injunction.  And covered persons are likely to lose valuable coverage if SF 383 is not enjoined, as third-party payors and health carriers seek to revise their health benefit plans to mitigate SF 383's costs through more limited prescription drug and health-benefits offerings and greater cost-sharing by covered persons.

120.    Wellmark, with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*, will seek a preliminary injunction only regarding Defendant's enforcement of provisions of SF 383 that the Court in *ABI* found to be preempted by ERISA or violative of the First Amendment, plus Iowa Code § 510B.4B.1.a. (for which Wellmark, as a PBM under Chapter 510B and SF 383, has standing to challenge).  It seeks only a level playing field for all of its plans and policies, subject to the same protections as the

*ABI* plaintiffs.  Wellmark preserves all grounds and claims for challenging the remaining parts of SF 383, based on the upcoming decision from the Eighth Circuit in *ABI*.

## REQUEST FOR RELIEF

WHEREFORE, Wellmark respectfully requests that this Court:

A.    Preliminarily enjoin enforcement of SF 383 as to the same provisions on which the Court enjoined enforcement under the *ABI* Preliminary Injunction, plus Iowa Code § 510B.4B.1.a., and on the same bases, for Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*;

B.    Preliminarily enjoin Defendant and officers, agents, subordinates, and employees under him from implementing or enforcing the same provisions on which the Court enjoined enforcement under the *ABI* Preliminary Injunction, plus Iowa Code § 510B.4B.1.a., and on the same bases, for Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*;

C.    Permanently enjoin enforcement of any and all requirements under SF 383 against Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*;

D.    Permanently enjoin Defendant and officers, agents, subordinates, and employees under him from implementing or enforcing any requirements under SF 383 or assessing penalties related to Chapter 510B as amended by SF 383 against Wellmark with respect to the plans and policies it insures and administers for entities and individuals who are not parties to *ABI*;

E.    Declare, pursuant to 28 U.S.C. § 2201, that ERISA preempts Chapter 510B as amended by SF 383 and that the state law is invalid under the First Amendment, for Wellmark with respect to the plans and policies it insures and administers for entities and individuals who

are not parties to *ABI*, and that any parts not preempted or barred under the First Amendment are inseverable from the remainder;

F.      Extend all preliminary and permanent relief to all entities with whom Wellmark contracts, who assist it, who are its agents, and for whom it is an agent with respect to the plans and policies Wellmark insures and administers for entities and individuals who are not parties to *ABI*;

G.      Award attorney fees and costs to Wellmark; and

H.      Grant Wellmark such additional or different relief as is just and proper.


October 14, 2025                    Respectfully submitted,

                                    */s/ Ryan G. Koopmans*
                                    Ryan G. Koopmans
                                    KOOPMANS LAW GROUP, LLC
                                    500 East Court Ave., Suite 420
                                    Des Moines, IA  50309
                                    Telephone: (515) 978-1140
                                    Email: ryan@koopmansgroup.com

                                    Anthony F. Shelley (*pro hac vice* application forthcoming)
                                    Joanne Roskey (*pro hac vice* application forthcoming)
                                    DeMario M. Carswell (*pro hac vice* application forthcoming)
                                    MILLER & CHEVALIER CHARTERED
                                    900 Sixteenth St., NW
                                    Washington, DC  20006
                                    Telephone:  (202) 626-5800
                                    Email: ashelley@milchev.com

                                    *Counsel for Plaintiffs Wellmark Inc., doing business in Iowa as Wellmark Blue Cross and Blue Shield of Iowa, Wellmark Health Plan of Iowa, Inc., and Wellmark of South Dakota, Inc.*